IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. RICHARD GERALD PAOLINO, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | No. 11-5436 |
| | : | |
| SUPERINTENDENT STEVEN | : | |
| R. GLUNT et al., | : | |
| Respondents. | : | |

REPORT AND RECOMMENDATION

TIMOTHY R. RICE                                              January 12, 2012
U.S. MAGISTRATE JUDGE

     Petitioner Richard Paolino, a prisoner at the State Correctional Institution in Houtzdale,

Pennsylvania, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

For the following reasons, I respectfully recommend Paolino's claims be denied as procedurally

defaulted and meritless.

FACTUAL AND PROCEDURAL HISTORY

     On April 12, 2002, a jury found Paolino guilty of 179 counts of insurance fraud, three

counts of delivering a controlled substance, and one count each of conspiracy to deliver

controlled substances, practicing osteopathic medicine without a license, conspiracy to practice

osteopathic medicine without a license, illegally prescribing controlled substances, and

conspiracy to illegally prescribe controlled substances.  See Commonwealth v. Paolino, 837 A.2d

1216, 1221 (Pa. Super. Ct. 2003).  Paolino was sentenced to an aggregate term of 30-120 years

confinement.  Id.

     The charges stemmed from Paolino's continued practice of osteopathic medicine after his

medical license was suspended.  Id. at 1218-19.  After his license was suspended, Paolino paid

two licensed physicians, Dr. Harmon and Dr. Collier, to sign their names and place their Drug

Enforcement Agency ("DEA") numbers on blank prescription pads so he could continue to write prescriptions for narcotics.  Id. at 1220-21.

Paolino was arrested and charged in early March of 2001.  Tr. of Proceedings at 9, Commonwealth v. Paolino, Nos. CP-09-CR-2180-2001, CP-09-CR-5020-2001 (Pa. Ct. Com. Pl. Bucks Mar. 15, 2002).[1]  The Commonwealth filed a motion to amend the criminal information to add one count of illegally prescribing controlled substances and a corresponding conspiracy charge.  See Motion to Amend Criminal Information, Commonwealth v. Paolino, No. CP-09-CR-2180-2001 (Pa. Ct. Com. Pl. Bucks Mar. 4, 2002) [hereinafter Motion to Amend].  The trial court summarily granted the motion on March 25, 2002, after holding a hearing on March 15, 2002.  See Order, Commonwealth v. Paolino, No. CP-09-CR-2180-2001 (Pa. Ct. Com. Pl. Bucks Mar. 25, 2002) [hereinafter Information Amendment Order].   Paolino's two-week jury trial began on April 1, 2002.  See 4/1/02 Tr.

The Commonwealth based the charges in the amended information on the theory Paolino was an accomplice to Harmon and Collier, who were prescribing medication outside the doctor-patient relationship by allowing Paolino to use their DEA numbers.  3/15/02 Tr. at 14-15.  The Commonwealth argued the defense was "on notice . . . of this activity . . . and . . . they have [had] a month to consider how to address that."  Id. at 15.  Indeed, Paolino contended in his own pre-trial motion he was improperly charged with delivery of a controlled substance, because delivery

---

[1] The state court record contains transcripts of the following proceedings: (1) a March 15, 2002 hearing on the Commonwealth's motion to amend the criminal information; (2) the jury trial commencing April 1, 2002; (3) the June 20, 2002 sentencing; and (4) the July 2, 2007 hearing on Paolino's petition for relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9542 et seq.  I will cite to each transcript by date and page number, e.g., "3/15/02 Tr. at __".

of a controlled substance outside the doctor-patient relationship, or improper delivery of a

controlled substance by a physician to a drug dependent person, was a more appropriate charge.

Omnibus Pre-trial Motion at 4, <u>Commonwealth v. Paolino</u>, Nos. CP-09-CR-2180-2001, CP-09-

CR-5020-2001, CP-09-CR-5021-2001 (Pa. Ct. Com. Pl. Bucks Mar. 4, 2002) [hereinafter

Omnibus Pre-trial Motion].

      The court noted at the hearing the Commonwealth was not alleging new facts the defense

would have to investigate before trial.  3/15/02 Tr. at 22, 31-32.  Paolino's counsel admitted there

was "no new set of facts that suddenly [came] to light."  <u>Id.</u> at 11.  Paolino did not claim he

lacked time to sufficiently prepare for trial on the amended charges.  <u>See id.</u> at 19 ("[The

Commonwealth] would have the Court simply accept that there's no prejudice if you have

notice . . . .  There's an air of prejudice in the Commonwealth charging somebody with a crime

over a year ago, having them sit in jail, and then saying we just changed the rules.").

      Paolino filed a timely appeal to the Superior Court, claiming:

- the trial court erred in denying his pretrial motion to quash the information and to suppress all evidence because the Attorney General's Office exceeded its jurisdiction in investigating and prosecuting the case;

- the trial court erred by permitting improper questioning of the Commonwealth's expert in violation of <u>Commonwealth v. Salameh</u>, 617 A.2d 1314 (Pa. Super. Ct. 1992);

- the sentence was manifestly unjust and excessive; and

- the trial court erred in failing to dismiss the charge of delivery of a controlled substance when a more specific charge applied.

<u>Paolino</u>, 837 A.2d at 1221-22; Brief for Appellant at 4, <u>Commonwealth v. Paolino</u>, No. 2011

EDA 2002 (Pa. Super. Ct. June 9, 2003) [hereinafter Direct Appeal Br.].  The Superior Court

affirmed on December 2, 2003, <u>Paolino</u>, 837 A.2d at 1231, and the Pennsylvania Supreme Court

denied Paolino's petition for allowance of appeal on October 20, 2004, Commonwealth v. Paolino, 860 A.2d 489 (Pa. 2004) (table).

On February 9, 2005, Paolino filed a timely PCRA petition.  Petition for Post Conviction Relief, Commonwealth v. Paolino, Nos. CP-09-CR-2180-2001, CP-09-CR-5020-2001, CP-09-CR-5021-2001 (Pa. Ct. Com. Pl. Bucks Feb. 6, 2005) [hereinafter PCRA Pet.].  At Paolino's request, the PCRA court permitted him to proceed pro se.  Id. at 14.  Paolino filed an amended PCRA petition on January 24, 2007, stating his claims did not "require an evidentiary hearing as there is no controversy."  Amended Petition for Post Conviction Relief at 16, Commonwealth v. Paolino, Nos. CP-09-CR-2180-2001, CP-09-CR-5020-2001, CP-09-CR-5021-2001 (Pa. Ct. Com. Pl. Bucks Jan. 24, 2007) [hereinafter Am. PCRA Pet.].  In his petition, Paolino claimed:

- the trial court erred in permitting the Commonwealth to amend the criminal information six days before trial;

- "government agents prevented a Commonwealth Official from contacting [Paolino] concerning his activities" to gain more evidence against Paolino;

- the evidence was insufficient to support several of his convictions;

- the Attorney General did not have jurisdiction to prosecute Paolino for insurance fraud;

- the fine imposed by the court was excessive and subjected him to double jeopardy;

- the trial court failed to determine whether Paolino could pay the imposed fines;

- charging Paolino with 702 counts of insurance fraud was multiplicitous;

- charging Paolino with 702 counts of insurance fraud suggested to the jury Paolino "committed more criminal activity than in fact occurred";

- the Board of Osteopathic Medicine failed to stay the suspension of Paolino's medical license while he was in bankruptcy proceedings;

4

- his medical license was suspended on a faulty assumption he had no professional liability insurance, violating the doctrine of laches;

- the restriction imposed during sentencing prohibiting Paolino from profiting from any publications or interviews regarding the case violated his First Amendment rights;

- the trial court improperly instructed the jury on the elements of practicing osteopathic medicine without a license;

- he was denied a "fair warning" that a failure to maintain professional liability insurance would result in a suspended medical license;

- he was not notified of the proceedings to suspend his medical license;

- "the Board of Osteopathic Medicine commingled [its] administrative function with a judicial function";

- a law enforcement agent "induced[] agents of [the Board of Osteopathic Medicine] not to act in accordance with their duties and willfully obstructed the administration of the Board[']s regulatory function";

- a law enforcement officer "intentionally obstructed, impaired, and perverted the administration of law and government function, by physical interference, and breach of official duty";

- ineffective assistance of trial and appellate counsel for failure to: raise "various meritorious claims"; move for a judgment notwithstanding the verdict after the Commonwealth failed to prove insurance fraud beyond a reasonable doubt; preserve and litigate the sufficiency of the evidence of insurance fraud; challenge the trial court's jurisdiction on the insurance fraud charges; challenge the amendment to the criminal information in post-trial motions; obtain an expert witness; move for a continuance; object to the testimony of a hostile expert witness; object to the trial court's improper jury instructions on the elements of practicing osteopathic medicine without a license; move to dismiss the charge of failure to practice osteopathic medicine without a license; and move for a judgment notwithstanding the verdict on the charge of conspiracy with Dr. Collier after Dr. Collier was acquitted.

PCRA Pet. at 4-16.  In his amended petition, Paolino further claimed he had a stipulated

agreement with the Commonwealth to dismiss the charges.  Am. PCRA Pet. at 4-16.  The PCRA

5

court denied his petition on January 12, 2009.  Order, Commonwealth v. Paolino, Nos. CP-09-CR-2180-2001, CP-09-CR-5020-2001, CP-09-CR-5021 (Pa. Ct. Com. Pl. Bucks Jan. 12, 2009).

Paolino timely appealed to the Superior Court, claiming a plethora of issues:

•       his medical license was suspended in violation of his due process rights;

•       his due process rights were violated when the Board of Osteopathic Medicine failed to stay the proceedings to suspend his medical license while he was engaged in bankruptcy proceedings;

•       the trial court proceeded with his trial and conviction, even though it lacked jurisdiction because the suspension of his medical license was unlawful;

•       the trial court lacked jurisdiction over the charges of insurance fraud;

•       he was deprived of his Fifth Amendment right to a grand jury indictment;

•       the PCRA court erred when it failed to enforce a stipulated agreement in which the District Attorney, Attorney General, and PCRA court agreed: (1) the criminal information was amended in violation of the Sixth Amendment, Fourteenth Amendment, Pennsylvania Constitution, and Pennsylvania Rules of Criminal Procedure; (2) the testimony of a hostile expert witness with a conflict of interest was improper; (3) the Court of Common Pleas of Bucks County did not have subject matter jurisdiction; and (4) there was no genuine issue of material fact;

•       the prosecution presented evidence obtained through an investigation the Attorney General lacked jurisdiction to conduct; and

•       ineffective assistance of trial and appellate counsel for failure to: object to the lack of jurisdiction due to the unlawful license suspension; object to the lack of jurisdiction to prosecute insurance fraud in state court; object to the amendment of the criminal information; object to a violation of Paolino's Sixth Amendment right to a fair trial after a hostile expert witness with a conflict of interest was permitted to testify; object to the violation of Pennsylvania Rule of Criminal Procedure 560; object to the deprivation of Paolino's Fifth Amendment right to a grand jury indictment; object to the Attorney General's lack of jurisdiction; request an on-the-record colloquy regarding the stipulation of evidence; and federalize issues pursuant to 28 U.S.C. § 2254.

Brief for Appellant at 28-69, Commonwealth v. Paolino, No. 480 EDA 2009 (Pa. Super. Ct. Feb. 22, 2010) [hereinafter PCRA Appeal Br.].[2]  On October 19, 2010, the Superior Court affirmed the denial of Paolino's PCRA petition, finding each issue was either waived, not cognizable, or meritless.  See PCRA Appeal Op. at 12-16.  Paolino's request for reargument was denied on December 29, 2010.  Appellate Docket at 4, Commonwealth v. Paolino, No. 480 EDA 2009 (Pa. Super. Ct.).  Paolino did not appeal to the Pennsylvania Supreme Court.[3]

On August 20, 2011, Paolino filed his timely[4] federal habeas petition, alleging:

1.      his medical license was suspended without notice and a hearing, violating his due process rights;

2.      the government unlawfully interfered with the process of suspending his medical license, violating his due process rights;

---

[2] Paolino framed most of his claims to the Superior as claims of PCRA court error for not correcting a specific constitutional defect.  See PCRA Appeal Br. at 28-69.  The Commonwealth contends framing his claims as PCRA error did not alert the state court to the presence of a federal claim, so the claims are not cognizable on federal habeas review.  See Response to Petition for Writ of Habeas Corpus, Paolino v. Glunt, No. 11-5436 (E.D. Pa. Nov. 29, 2011).  I disagree.  Pro se petitions are construed liberally, see Leamer v. Fauver, 288 F.3d 532, 547 (3d Cir. 2002), and the Superior Court did not address Paolino's claims as ones of PCRA court error, see Memorandum at 12-16, Commonwealth v. Paolino, No. 480 EDA 2009 (Pa. Super. Ct. Oct. 19, 2010) [hereinafter PCRA Appeal Op.].

[3] Pennsylvania Supreme Court Order No. 218 states federal habeas petitioners challenging Pennsylvania convictions no longer have to appeal to the state supreme court to exhaust their claims.  See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

[4] Paolino's conviction became final on January 18, 2005, ninety days after the Pennsylvania Supreme Court denied review of his direct appeal.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).  He had one year from that date to file a federal habeas petition.  28 U.S.C. § 2244(d)(1).  That limitations period was tolled twenty-two days later on February 9, 2005 when Paolino filed his PCRA petition, and it remained tolled until January 28, 2011, thirty days after the Superior Court denied his claim to allow for an appeal to the Pennsylvania Supreme Court.  See 28 U.S.C. § 2244(d)(2); Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998).  Therefore, Paolino had 343 days remaining, or until January 6, 2012 to file his federal habeas petition.

3.      the proceedings to suspend his medical license were not stayed while he was engaged in bankruptcy proceedings, violating his due process rights;

4.      the trial court wrongfully tried, convicted and imprisoned him on the assumption his license suspension was correctly determined, violating his due process rights;

5.      the state court lacked jurisdiction over charges of Medicare fraud, violating his due process rights;

6.      he was deprived of his Fifth Amendment right to a federal grand jury indictment on the charges of Medicare fraud;

7.      he was deprived of fair notice to new charges when the criminal information was amended six days before trial, violating his Sixth Amendment rights;

8.      the prosecution introduced a "hostile expert witness with a known conflict-of-interest," violating his Sixth Amendment right to a fair trial;

9.      the Attorney General presented investigative evidence where he had no jurisdiction to investigate or prosecute federal crimes, violating Paolino's due process rights;

10.     the Attorney General "invalidly circumvented [Paolino's] right to a federal grand jury," violating his due process rights;

11.     the state courts committed reversible error in denying his pre-trial motion to quash the information and suppress evidence acquired through an investigation over which the Attorney General had no jurisdiction, violating his due process rights;

12.     the court abused its discretion and was biased in denying his motion to quash the information or to suppress the evidence because the court "mistakenly assumed jurisdiction on an erroneous state board decision," violating his due process rights;

13.     prosecutorial misconduct for prosecuting Paolino for actions that resulted from an unlawful suspension of his medical license;

14.     prosecutorial misconduct for prosecuting federal crimes in state court;

15.     prosecutorial misconduct for denying Paolino his Fifth Amendment right

to a grand jury indictment;

16.     prosecutorial misconduct for submitting insurance claim forms as evidence of federal crimes in state court;

17.     prosecutorial misconduct for presenting a biased medical expert witness with a conflict of interest;

18.     ineffective assistance of counsel for failure to "perform a reasonably substantial investigation into petitioner's meritorious grounds";

19.     ineffective assistance of counsel for not objecting to the unlawful medical license suspension;

20.     ineffective assistance of counsel for not objecting to the prosecution of federal crimes before a state court without jurisdiction and to the lack of a federal grand jury indictment;

21.     ineffective assistance of counsel for submitting insurance claim forms for federal crimes before a state court;

22.     ineffective assistance of counsel for failure to file a written response to the Commonwealth's motion to amend the information as directed by the trial court;

23.     ineffective assistance of counsel for failure to seek a continuance after the information was amended;

24.     ineffective assistance of counsel for failure to object to an expert witness with a conflict of interest;

25.     ineffective assistance of counsel for failure to object to the Attorney General's investigation without jurisdiction;

26.     ineffective assistance of appellate counsel for failing to challenge the trial court's denial of his motion to quash the information or suppress evidence;

27.     ineffective assistance of counsel for failing to object to prosecutorial misconduct as enumerated in claims thirteen through seventeen; and

28.     cumulative prosecutorial misconduct and error of trial and appellate counsel.

Memorandum of Law in Support of Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254

9

at 40-89, <u>Paolino v. Glunt</u>, No. 11-5436 (E.D. Pa. Aug. 20, 2011) [hereinafter Pet'r's Br.].[5]

For the following reasons, claims five, nine, and twenty-two are meritless, and all remaining claims are procedurally defaulted.  Paolino's petition should be dismissed with prejudice.

<u>DISCUSSION</u>

I.       Procedurally Defaulted Claims

Twenty-five of Paolino's claims were not raised in state court, were deemed waived or

---

[5] Paolino's petition lists only seven grounds for relief, but each ground contains multiple discrete claims.  <u>See</u> Pet'r's Br. at 40-89.  I have renumbered his claims accordingly.  <u>See</u> <u>Leamer,</u> 288 F.3d at 547 (requiring liberal construction of pro se complaints).

Paolino contends he has clear and convincing evidence to rebut the presumption the state court's findings of facts are correct.  Petitioner's Traverse to Answer at 4, <u>Paolino v. Glunt</u>, No. 11-5436 (E.D. Pa. Dec. 23, 2011) [hereinafter Pet'r's First Reply]; Petitioner's Points and Authorities in Support of Traverse, at 1, <u>Paolino v. Glunt</u>, No. 11-5436 (E.D. Pa. Dec. 23, 2011) [hereinafter Pet'r's Second Reply].  He maintains the fact-finding methods of the state courts are "called into question," because the various constitutional violations forming the basis of Paolino's habeas petition and PCRA petitions make the fact-finding process unreliable.  <u>See</u> Pet'r's First Reply at 9-11, 16, 18-19, 27-28.  Paolino challenges the jury's finding that he did not have a valid medical license, Pet'r's Second Reply at 3-4, as well as facts relating to the claims presented in his habeas petition without specifying which factual findings are incorrect, Pet'r's First Reply at 9, 11-13, 15-16, 18-19, 21, 24-25, 27-28.  Paolino offers no evidence to support his contention the findings of fact relating to his habeas claims are unreasonable.  Thus, he has failed to meet his burden and present "clear and convincing evidence" the state court's factual findings are incorrect.  <u>See</u> § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340-41 (2003); <u>Rountree v. Balicki</u>, 640 F.3d 530, 541 (3d Cir. 2011).

Additionally, Paolino asserts the Commonwealth admitted numerous assertions made by Paolino in the brief accompanying his petition by failing to deny them as required by Federal Rule of Civil Procedure 8.  <u>See</u> Pet'r's First Reply at 8-9, 12, 15, 17-18, 20-21, 27; Pet'r's Second Reply at 5, 8-9.  Rule 8 states "[a]n allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."  Fed. R. Civ. P. 8(b)(6).  Because § 2254 does not require a response from the government, <u>see</u> Rule 4, 28 U.S.C. fol. § 2254; <u>Moncrieffe v. Yost</u>, 367 F. App'x 286, 288 n.2 (3d Cir. 2010), the Commonwealth's response to Paolino's petition is not subject to Rule 8(b)(6), <u>see</u> <u>Tarver v. United States</u>, 344 F. App'x 581, 583 (11th Cir. 2009).

not cognizable by the state courts, or were not pursued through all levels of state court review. Those claims are procedurally defaulted.

A federal court may not grant habeas relief to a state prisoner unless the prisoner has exhausted his available remedies in state court.  28 U.S.C. § 2254(b); Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011); Cone v. Bell, 556 U.S. 449, 129 S. Ct. 1769, 1780 (2009); Nara v. Frank, 488 F.3d 187, 197 (3d Cir. 2007).  A state prisoner must complete "the State's established appellate review process" to "give the state courts one full opportunity to resolve any constitutional issues."  O'Sullivan v. Boerkel, 526 U.S. 838, 845 (1999); Nara, 488 F.3d at 197; see Cone, 129 S. Ct. at 1780; Woodford v. Ngo, 548 U.S. 81, 92 (2006).  A petitioner "shall not be deemed to have exhausted the remedies available . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).

To exhaust a claim, a petitioner must "fairly present" it to the state courts, "thereby alerting [the state courts] to the federal nature of the claim."  Baldwin v. Reese, 541 U.S. 27, 29 (2004); see O'Sullivan, 526 U.S. at 848; Evans v. Sec'y Pa. Dep't of Corr., 645 F.3d 650, 657 (3d Cir. 2011); Nara, 488 F.3d at 197; Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002).  The relevant inquiry is whether the petitioner presented in state court the legal theory and supporting facts asserted in the federal habeas petition.  Nara, 488 F.3d at 198; Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001); see Revels v. Diguglielmo, No. 03-5412, 2005 WL 1677951, at *4 (E.D. Pa. July 18, 2005).  In evaluating whether a claim has been fairly presented to the state courts, the substance of the claim controls, not its technical designation.  Bisaccia v. Attorney Gen. of N.J., 623 F.2d 307, 312 (3d Cir. 1980); Veal v. Myers, 326 F. Supp. 2d 612, 624 (E.D. Pa. 2004) (citing Evans v. Ct. Com. Pl., 959 F.2d 1227, 1231 (3d Cir. 1992)).

"[I]f [a] petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is procedural default for purposes of federal habeas . . . ." Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); see also McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).  Although the issue is best addressed by the state courts, a federal court may dismiss a petition as procedurally barred if state law would unambiguously deem it defaulted.  See Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995).  Similarly, procedural default occurs when a petitioner presents the claim in the state system, but the state court refuses to address the claim on its merits because of "a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  Cone, 129 S. Ct. at 1780 (quoting Coleman, 501 U.S. at 729).  The purpose of the procedural default rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court.  Coleman, 501 U.S. at 732.

An issue is waived if a petitioner fails to raise it and the issue could have been raised before trial, at trial, on appeal, in a habeas corpus proceeding, or in a prior proceeding.  42 Pa. Cons. Stat. Ann. § 9544(b); see also Sistrunk v. Vaughn, 96 F.3d 666, 671 n.4 (3d Cir. 1996) ("[T]he [Pennsylvania Rules of Appellate Procedure] dictate that an issue raised at the trial level but not preserved on appeal will not be considered by any subsequent appellate court."); Commonwealth v. D'Collanfield, 805 A.2d 1244, 1246 (Pa. Super. Ct. 2002) (an issue not preserved on appeal was waived).  Pennsylvania courts also will deem an issue waived if a petitioner fails to present "any argument, citation, or supporting legal authority to substantiate [it]."  Commonwealth v. Renchenski, 988 A.2d 699, 703 (Pa. Super. Ct. 2010); see also

Commonwealth v. Berry, 877 A.2d 479, 485 (Pa. Super. Ct. 2005).

A claim is cognizable on PCRA review only if a petitioner alleges: (1) his conviction resulted from a violation of the Pennsylvania Constitution or the Constitution or laws of the United States which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place"; (2) ineffective assistance of counsel; (3) an unlawfully induced guilty plea; (4) the government improperly obstructed his right to appeal a meritorious issue; (5) newly discovered exculpatory evidence; (6) a sentence greater than the lawful maximum; or (7) the court lacked jurisdiction over the proceeding.  42 Pa. Cons. Stat. Ann. § 9543(a)(2).  Moreover, state collateral actions must be filed within one year of the date on which the conviction became final.  Id. § 9545(b)(1).  Claims based on facts not known to the petitioner at the time of trial must be raised within sixty days of the petitioner's discovery of such facts.  Id. § 9545(b)(1)(ii), (b)(2).

Such state law waiver, cognizability, and PCRA statute of limitation rules are independent and adequate state law grounds that bar federal habeas review.  Peterson v. Brennan, 196 F. App'x 135, 142 (3d Cir. 2006); Griggs v. DiGuglielmo, No. 06-1512, 2007 WL 2007971, at *5 (E.D. Pa. July 3, 2007); see Branch v. Tennis, No. 07-3532, 2009 WL 1089560, at *9-10 (E.D. Pa. Apr. 22, 2009) (federal habeas claims were procedurally defaulted where PCRA claims waived for lack of discussion and argument); Byrnes v. Mechling, No. 03-3023, 2004 WL 792760, at *11-12 (E.D. Pa. Apr. 12, 2004) (federal habeas claim was procedurally defaulted where claim was determined to be not cognizable on PCRA review); Wheeler v. Vaughn, No. 01-428, 2004 WL 73728, at *8 (E.D. Pa. Jan. 6, 2004) (same).  These are rules of general applicability which are "firmly established, readily ascertainable, and regularly followed."  See

Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (quoting Szuchon v. Lehman, 273 F.3d 299,

327 (3d Cir. 2001)); see also Cone, 129 S. Ct. at 1780.

A.     Claims Paolino Never Raised in State Court

Twelve of the claims listed in Paolino's habeas petition were not raised in state court.

Those claims are based on: a violation of his Sixth Amendment right to a fair trial because the

prosecution presented a hostile expert witness with a conflict of interest (claim eight)[6]; the

Attorney General invalidly circumvented Paolino's right to a grand jury (claim ten)[7]; a violation

---

[6] This claim was not raised before the PCRA court.  See PCRA Pet.  In his PCRA appeal, Paolino raised a similar claim.  There, however, he raised it in the context of alleging the Commonwealth was collaterally estopped from opposing his petition.  See PCRA Appeal Br. at 60-61.  Additionally, Paolino cited no federal constitutional law or claimed his federal due process rights were violated.  See id.  Thus, the claim he asserts here was not fairly presented to the state courts.  See Anderson v. Harless, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state court, or that a somewhat similar state-law claim was made.  In addition, the habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." (internal citations omitted)); Keller, 251 F.3d at 413 (same); McCandless, 172 F.3d at 261 (petitioner "must . . . communicate[] to the state courts in some way that [he is] asserting a claim predicated on federal law").  Even if the claim was fairly presented, the state courts would have deemed it waived for failure to cite relevant law and the record, see Renchenski, 988 A.2d at 703, and failure to raise it on direct review, see 42 Pa. Cons. Stat. Ann. § 9544(b).

[7] This was not fairly presented to the state courts.  It was not raised in Paolino's PCRA petition.  See PCRA Pet.  The claim was presented in Paolino's PCRA appeal brief with no citation to relevant case law or the record in the same section as his claim the Attorney General did not have jurisdiction to investigate and prosecute.  PCRA Appeal Br. at 62-63.  The Superior Court did not specifically address Paolino's grand jury claim.  In response to both claims, the Superior Court concluded Paolino was entitled to no relief because he "was charged, tried, and convicted under the laws of Pennsylvania."  PCRA Appeal Op. at 14.  Because the claim was presented without citation to relevant case law or the record, the claim was waived under state law.  See Renchenski, 988 A.2d at 703.

Even if the claim were fairly presented, it is meritless.  Paolino was properly convicted of state crimes, see discussion supra at Section III.B, and there is no right to a grand jury indictment in Pennsylvania, see Alexander v. Louisiana, 405 U.S. 625, 633 (1972); Pa. Const. art I, § 10; Commonwealth v. Webster, 337 A.2d 914, 916 (Pa. 1975).

14

of his due process rights because the trial court improperly denied his pre-trial motion to quash

the information or suppress evidence acquired through an investigation conducted without

jurisdiction (claim eleven); a violation of his due process rights because the trial court improperly

denied his pre-trial motion to quash the information or suppress evidence on the basis the

prosecution was based on an erroneous board determination (claim twelve)[8]; all claims relating to

prosecutorial misconduct (claims thirteen, fourteen, fifteen, sixteen, seventeen)[9]; ineffective

assistance of appellate counsel for failing to raise trial court error in denying his motion to quash

the information or suppress the evidence (claim twenty-six); ineffective assistance of counsel for

failing to object to prosecutorial misconduct (claims twenty-seven); and both cumulative error

claims (claim twenty-eight).  See Pet'r's Br. at 63-89.  Under Pennsylvania law, Paolino has

waived each of these claims.  See 42 Pa. Cons. Stat. Ann. § 9544(b).

---

[8] On direct appeal, Paolino alleged the trial court erred in denying his pre-trial motion to
quash the information or suppress all evidence on the grounds the Attorney General exceeded its
jurisdiction under 71 Pa. Cons. Stat. Ann. § 732-205 in conducting the investigation and
prosecution of the case.  Paolino, 837 A.2d at 1222-23; Direct Appeal Br. at 20-29.  However,
Paolino never cited the Fourteenth Amendment or federal due process rights in state court,
instead relying only on state law.  See Paolino, 837 A.2d at 1222-23; Direct Appeal Br. at 20-29
(citing no federal constitutional law).  Because Paolino's claim was not framed as a federal due
process claim on direct appeal, claims eleven and twelve were not fairly presented to the state
courts.  See Anderson, 459 U.S. at 6; Keller, 251 F.3d at 413; McCandless, 172 F.3d at 261.

[9] Paolino asserts he raised his prosecutorial misconduct claims before the Superior Court.
Pet'r's First Reply at 15.  Paolino, however, mentioned prosecutorial misconduct only once in
passing in the procedural history section of his PCRA appeal brief with no specific allegation of
prosecutorial misconduct and no citation of relevant law or supporting facts.  See PCRA Appeal
Br. at 13.  Additionally, Paolino did not include any claims of prosecutorial misconduct in his
Statement of Matters Complained of on Appeal.  See Concise Statement of Errors Complained of
on Appeal Pursuant to Pa.R.A.P. 1925(b)(4), Commonwealth v. Paolino, Nos. CP-09-CR-2180-
2001, CP-09-CR-5020-2001, CP-09-CR-5021-2001 (Pa. Ct. Com. Pl. Bucks Feb. 25, 2009).
Thus, Paolino did not fairly present any prosecutorial misconduct claims to the Superior Court.
See Coleman, 501 U.S. at 729; Commonwealth v. Castillo, 888 A.2d 775, 780 (Pa. 2005);
Commonwealth v. Lord, 719 A.2d 306, 309 (Pa. 1998)

Moreover, Paolino's conviction became final on January 18, 2005, ninety days after the Pennsylvania Supreme Court denied review of his direct appeal.  See Swartz, 204 F.3d at 419. Paolino is now well beyond the one-year limitations period for filing an additional PCRA petition.  See 42 Pa. Cons. Stat. Ann. § 9545(b)(1) (all petitions -- including second or subsequent petitions -- must be filed within one year of the time when a conviction becomes final).  Therefore, these twelve claims are procedurally defaulted because he failed to properly present them to the state courts, and independent and adequate state law grounds now preclude state court review.  See Coleman, 501 U.S. at 729.

B.   Claims Deemed Waived or Not Cognizable by State Court

Nine of Paolino's claims were arguably among those raised in his PCRA appeal to the Superior Court, but were found to be waived or not cognizable.  The following four counsel ineffectiveness claims were raised in his PCRA appeal, but deemed waived by the Superior Court: failure to object to the unlawful suspension of his medical license (claim nineteen); failure to object to the prosecution of federal crimes before a state court without jurisdiction and to the lack of a federal grand jury (claim twenty); failure to object to the testimony of an expert witness with a conflict of interest (claim twenty-four); and failure to object to the Attorney General's investigation without jurisdiction (claim twenty-five).  See PCRA Appeal Op. at 15; Pet'r's Br. at 83-87; PCRA Appeal Br. at 64, 67-69.  Similarly, the following five claims were arguably among those raised to the Superior Court, but were deemed not cognizable: his medical license was suspended without notice and a hearing, violating his due process rights (claim one); the government unlawfully interfered with the process of suspending his medical license, violating his due process rights (claim two); the proceedings to suspend his medical license were not

16

stayed while he was engaged in bankruptcy proceedings, violating his due process rights (claim

three)[10]; a violation of due process rights because he was convicted by a court acting on the

assumption his medical license was lawfully suspended (claim four); and he was deprived of his

Fifth Amendment right to a federal grand jury indictment on the charges of Medicare fraud

(claim six).  See PCRA Appeal Op. at 12-13; Pet'r's Br. at 40-48, 52-53; PCRA Appeal Br. at

30-42, 62-63.

The Superior Court reasoned the assertions of ineffective assistance of counsel, although

cognizable on PCRA review, were waived because they were not "supported by citation to the

record and relevant legal authority."  PCRA Appeal Op. at 15.[11]  The Superior Court did not

explain why the claims regarding the suspension of Paolino's medical license and the lack of a

grand jury indictment were not cognizable on PCRA review.[12]  Nonetheless, it is not within "the

---

[10] In his reply, Paolino appears to be raising an equal protection claim related to the Board of Osteopathic Medicine's alleged failure to stay the proceedings to suspend his medical license while Paolino was engaged in bankruptcy proceedings.  See Pet'r's Second Reply at 10-12.  Even assuming this new claim is timely, it is procedurally defaulted.  The claim was arguably raised in Paolino's PCRA petition, but it was abandoned on appeal.  Compare PCRA Pet. at 9, with PCRA Appeal Br.  Because Paolino failed to properly present this claim to the Superior Court, it is procedurally defaulted, and independent and adequate state law grounds now preclude state court review.  See Coleman, 501 U.S. at 729.

[11] Paolino maintains "the state court [did not] clearly and expressly rel[y] on a procedural default" with regard to the ineffectiveness of counsel claims, and "therefore denies that the alleged procedural default is 'independent.'"  Pet'r's First Reply at 27.  The Superior Court, however, relied on a state procedural rule in determining the claims were waived for failure to cite relevant law and facts.  See PCRA Appeal Op. at 15.

[12] The Attorney General, however, argued in its brief to the Superior Court that Paolino's claims relating to his unlawful suspension of his license (claims one through four) were not cognizable, citing Commonwealth v. Comly, 779 A.2d 618, 620-21 (Pa. 2001), which held a suspension of a hunting license was not reviewable on a PCRA appeal.  Brief for Appellee at 8, Commonwealth v. Paolino, No. 480 EDA 2009 (Pa. Super. Ct. July 1, 2010).

province of a federal habeas court to reexamine state-court determinations on state-law questions," Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), such as what sort of claims are properly presented in state collateral proceedings.[13]

The Superior Court disposed of these nine claims without reaching their merits, finding they were waived or not cognizable under Pennsylvania law.  PCRA Appeal Op. at 12-13, 15; Renchenski, 988 A.2d at 703.  Because state law waiver and determinations of cognizability are "independent and adequate state law grounds that bar federal habeas review," these claims are procedurally defaulted.  Peterson, 196 F. App'x at 142; see Cone, 129 S. Ct. at 1780.

C.    Claims Raised, but Not Exhausted

Four other claims were included, in some form, in at least one of Paolino's state court filings.[14]  However, none of these claims were "fairly presented" to, and exhausted in, the state courts.  The claims which were arguably abandoned by Paolino on PCRA appeal are: he was deprived of fair notice to new charges when the criminal information was amended six days before trial, violating his Sixth Amendment rights (claim seven)[15]; ineffective assistance of

---

[13] Even assuming Paolino's claim he was deprived of his Fifth Amendment right to a grand jury was not procedurally defaulted, the claim is without merit because Paolino was properly convicted under Pennsylvania law and was not entitled to a grand jury indictment.  See discussion infra at Section III.B and supra at note 7.

[14] In concluding Paolino may have raised these claims before the PCRA court, I have construed his pro se state court filings liberally.  See Leamer, 288 F.3d at 547.

[15] Paolino did raise a similar claim in his PCRA appeal to the Superior Court.  See PCRA Appeal Br. at 52-60.  The Superior Court read the claim, however, as an ineffective assistance of counsel claim.  See PCRA Appeal Op. at 13 n.3.  Thus, the claim that the information was improperly amended was not fairly presented to the state court.  See Picard v. Connor, 404 U.S. 270, 277 (1971) (claim raised in habeas petition must be "substantial equivalent" of claim raised to state court).

counsel for failure to "perform reasonably substantial investigation into petitioner's meritorious grounds" under the Sixth Amendment (claim eighteen); ineffective assistance of counsel for submitting insurance claim forms as evidence of federal crimes before a state court (claim twenty-one); and ineffective assistance of counsel for failing to seek a continuance after the information was amended (claim twenty-three). Compare PCRA Pet. at 5, 12-14, with PCRA Appeal Br.

Under Pennsylvania law, Paolino has waived the four claims he failed to fairly present through all levels of state court review. See 42 Pa. Cons. Stat. Ann. § 9544(b). Paolino's conviction became final almost seven years ago. The factual basis for each of the four claims at issue was apparent at trial -- when, for example, the information was amended and his attorney stipulated to the submission of insurance claim forms. None of the claims are based on newly recognized constitutional rights, and Paolino does not allege government interference prevented him from raising any of his claims in state court within the one-year limitations period. Therefore, Paolino may not avail himself of any statutory exception to the PCRA's one-year deadline. See id.

Because Paolino failed to properly present these four claims to the Superior Court, they are procedurally defaulted, and independent and adequate state law grounds now preclude state court review. See Coleman, 501 U.S. at 729.

---

Even if this claim were not procedurally defaulted, it is meritless. Paolino had sufficient notice to prepare an adequate defense, see Gautt v. Lewis, 489 F.3d 993, 1003 (3d Cir. 2007), because the charges added in the amendment to the criminal information were based on the same set of facts as the other charges, see Tr. 3/15/02 at 11 (Paolino's attorney admits "no new set of facts that suddenly [came] to light"). Additionally, the motion to amend the information was filed one month before trial on March 4, 2002, see Motion to Amend, so the amendment was not a complete surprise when it was amended six days before trial as Paolino asserts.

D.      Cause, Prejudice, or Miscarriage of Justice

Paolino, nevertheless, may obtain federal habeas review of his twenty-five defaulted

claims if he can "demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider these claims will result in a

fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; Smith v. Murray, 477 U.S. 527,

533 (1986); see also Bousley, 523 U.S. at 622; Leyva, 504 F.3d at 362 n.6, 366; Griggs, 2007

WL 2007971, at *5.  These requirements are grounded in the need for finality and comity, to

ensure state courts have an adequate opportunity to review a case on the merits.  Smith, 477 U.S.

at 533.

To demonstrate cause sufficient to excuse default, Paolino must prove "some objective

factor external to the defense impeded counsel's efforts to comply with the State's procedural

rule."  Coleman, 501 U.S. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986));

Sistrunk, 96 F.3d at 675.  To establish prejudice, Paolino must show "actual prejudice resulting

from the errors of which he complains."  McClesky v. Zant, 499 U.S. 467, 494 (1991) (quoting

United States v. Frady, 456 U.S. 152, 170 (1982)).  Actual prejudice exists if the alleged errors

"worked to his actual and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions."  Frady, 456 U.S. at 170.

To establish the requisite "fundamental miscarriage of justice," as an alternative to

showing cause and prejudice, Paolino must demonstrate "actual innocence."  See Schlup v. Delo,

513 U.S. 298, 324 (1995); Houck v. Stickman, 625 F.3d 88, 93 (3d Cir. 2010); Leyva, 504 F.3d

at 366.  To satisfy this standard, Paolino must do more than summarily assert he is innocent; he

must present "new reliable evidence" of his innocence, such as "exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence" not presented at trial.  Schlup, 513 U.S. at 324; see Houck, 625 F.3d at 93; Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004) (addressing claim of actual innocence but rejecting it on the merits).  Moreover, he must demonstrate the new evidence would make it more likely than not that "no reasonable juror would find [Paolino] guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 538 (2006); see Schlup, 513 U.S. at 316 (even a "concededly meritorious constitutional violation" is not sufficient to establish a miscarriage of justice and excuse procedural default absent new evidence of innocence); Houck, 625 F.3d at 93, 95-97 (examining new evidence of actual innocence and finding it insufficient "to invoke the rare and extraordinary remedy" of excusing procedural default).

    Paolino has not alleged cause or prejudice to excuse the default of his claims, nor has he established failure to consider his claims will result in a fundamental miscarriage of justice.  To the contrary, Paolino stated in his habeas petition "[a]ll grounds were previously presented and exhausted in all required [s]tate [c]ourt's of right." Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody at 10, Paolino v. Glunt, No. 11-5436 (E.D. Pa. Aug. 20, 2011).  Moreover, Paolino requested his PCRA petition be decided without an evidentiary hearing, see Am. PCRA Pet. at 16, and sought permission to proceed without counsel.  This precludes any claim that the state court impeded his efforts to present his claims.

    Despite referring to himself as "actually 'factually' innocent," see, e.g., Pet'r's Br. at 1; Pet'r's First Reply at 6, the only evidence Paolino offers as proof of his innocence is his Chapter 11 bankruptcy petition, see Pet'r's Second Reply at 6-7.  Paolino contends the petition is proof his medical license was suspended in violation of the automatic stay provisions of the

Bankruptcy Code.  Id. at 7.  Paolino maintains "no reasonable juror would have convicted him upon learning that the State Board of Osteopathic Medicine violated bankruptcy protections."  Id.  The bankruptcy petition, however, does constitute "new reliable evidence" of innocence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" not presented at trial.  Schlup, 513 U.S. at 324.  First, even if the bankruptcy petition were proof of innocence of some charges, it is not proof he is innocent of all charges, such as the conspiracy charges.  Second, his bankruptcy petition was available to Paolino at the time of trial.  Absent some new evidence of innocence that was not available to Paolino at trial, he has not satisfied his burden of showing a miscarriage of justice.  Id.; Hubbard, 378 F.3d at 341.

Paolino also maintains his claims should be decided on the merits, despite the failure to exhaust, under § 2254(b)(1)(B).  Pet'r's Second Reply at 6.  Failure to exhaust is excused if "there is an absence of an available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  § 2254(b)(1)(B); Parker v. Kelchner, 429 F.3d 58, 62 (3d Cir. 2005).  Even if Paolino could show his failure to exhaust is excusable under § 2254(b)(1)(B), the exception is inapplicable here because Paolino's claims are procedurally defaulted, rather than merely unexhausted.  See Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000) ("If . . . state procedural rules bar a petitioner from seeking further relief in state courts, 'the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' Even so, this does not mean that a federal court may, without more, proceed to the merits.  Rather, claims deemed exhausted because of a state procedural bar are procedurally defaulted . . . .'" (internal citations omitted)); Szuchon v. Lehman, 273 F.3d 299, 323 n.14 (3d Cir. 2001) ("Exhaustion . . . can be excused as futile, but the . . . claim is defaulted

because [Petitioner] failed to exhaust it despite ample opportunities to do so.  A federal court can reach the merits of a defaulted claim only if the petitioner shows cause and prejudice or a fundamental miscarriage of justice." (internal citations omitted)).

Accordingly, the twenty-five claims Paolino waived by failing to fairly present them in state court are procedurally defaulted and unreviewable.

II.    Meritless Claims

A.    Legal Standards

State court decisions merit substantial deference.  See 28 U.S.C. § 2254(d); cf. Pinholster, 131 S. Ct. at 1398 (standard for granting a habeas petition is "difficult to meet," with the petitioner carrying the burden of proof) (quoting Harrington v. Richter, 131 S. Ct. 770, 786 (2011).  Under AEDPA, "if the state-court decision was reasonable, it cannot be disturbed." Hardy v. Cross, 132 S. Ct. 490, 495 (2011) (per curiam).  I cannot grant a writ of habeas corpus unless I find the state court's adjudication of Paolino's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d); see Showers v. Beard, 635 F.3d 625, 628 (3d Cir. 2011).  When applying this strict standard, I must presume the state court's findings of fact are correct, and Paolino must rebut that presumption by clear and convincing evidence.  See § 2254(e)(1); Miller-El, 537 U.S. at 340-41; Rountree, 640 F.3d at 541.

A state court ruling is "contrary to" clearly established Supreme Court precedent for the purposes of § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Rountree, 640 F.3d at 537; see Breakiron v. Horn, 642 F.3d 126, 131 (3d Cir. 2011). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court.[16] Williams, 529 U.S. at 404-05; see Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). The state court is not required to cite, or even have an awareness of, governing Supreme Court precedent, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf. Richter, 131 S. Ct. at 785 ("§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference).

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule from Supreme Court decisions, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08; see Lambert v. Beard, 633 F.3d 126, 132-33 (3d Cir. 2011). When making the "unreasonable application" inquiry, I must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; see also Matteo, 171 F.3d at 891 (describing the relevant inquiry as "whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under [Supreme Court precedent]"). A court that unreasonably extends an established

---

[16] Federal district court and appellate court decisions applying Supreme Court precedent, however, may amplify that precedent. Hardcastle v. Horn, 368 F.3d 246, 256 n.3 (3d Cir. 2004) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999)).

24

rule to a new context where it should not apply, or unreasonably fails to extend such a rule to a new context where it should apply, may be deemed to have unreasonably applied the correct rule. Williams, 529 U.S. at 407; Breakiron, 642 F.3d at 131.  "[I]t is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles, 129 S. Ct. at 1414.

A showing of clear error is insufficient.  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); see also Douglas v. Cathal, 456 F.3d 403, 417 (3d Cir. 2006) (a writ is properly denied where a state court's determination is not objectively unreasonable, even where reasonable jurists may disagree about the merits of the underlying claim).  I may not grant habeas relief "merely . . . because the state court applied federal law erroneously or incorrectly."  Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)).  Rather, I must determine whether the state court's "determination was unreasonable -- a substantially higher threshold."  Knowles, 129 S. Ct. at 1420 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)); see also Cavazos v. Smith, 565 U.S. ___, 132 S. Ct. 2, 4 (2011) (per curiam) (habeas court "may not overturn a state court decision . . . simply because the federal court disagrees with [it]"); Richter, 131 S. Ct. at 786-87 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"); Lambert, 633 F.3d at 132.

Clearly established federal law governing ineffectiveness claims is set forth in the two-part test of Strickland.  See Premo v. Moore, 131 S. Ct. 733, 739 (2011); Padilla v. Kentucky, 130 S. Ct. 1473, 1482 (2010); Breakiron, 642 F.3d at 137.  "First, the defendant must show counsel's performance was deficient," which requires showing "counsel made errors so serious

that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687.  "Second, the defendant must show the deficient performance prejudiced the defense."  Id.; see also Breakiron, 642 F.3d at 137; Thomas, 428 F.3d at 499. "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.  Pennsylvania applies the same test for ineffective assistance of counsel as the federal courts do.[17]  Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000); Sneed, 899 A.2d at 1075-76.

Counsel's ineffectiveness is measured objectively, considering all the circumstances.  See Strickland, 466 U.S. at 687-88; Breakiron, 642 F.3d at 137.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Knowles, 129 S. Ct. at 1420 (quoting Strickland, 466 U.S. at 687-88); accord Moore, 131 S. Ct. at 740; Padilla, 130 S. Ct. at 1482; see also Showers, 635 F.3d at 630.  In evaluating counsel's performance, I must be "highly deferential" and "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances.  Strickland, 466 U.S. at 689; accord Knowles, 129 S. Ct. at 1420.

"Strickland and its progeny make clear that counsel's strategic choices will not be second guessed by post hoc determinations that a different . . . strategy would have fared better."  Rolan

---

[17] In Pennsylvania, the ineffective assistance of counsel standard requires the petitioner to "rebut the presumption of professional competence" by demonstrating: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interest; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." Commonwealth v. Sneed, 899 A.2d 1067, 1076 (Pa. 2006).  If the petitioner fails to satisfy any of the standard's prongs, the claim will be rejected.  Id.

v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 466 U.S. at 689); see also Pinholster, 131 S. Ct. at 1403, 1407 (requiring a habeas court to "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did" (quotations omitted)). A strategic choice "made after thorough investigation of law and facts relevant to plausible options [is] virtually unchangeable." Knowles, 129 S. Ct. at 1420 (quoting Strickland, 466 U.S. at 690); see Pinholster, 131 S. Ct. at 1407 ("It is '[r]are' that constitutionally competent representation will require 'any one technique or approach.'" (quoting Richter, 131 S. Ct. at 779)). The relevant inquiry is not whether Paolino's counsel was prudent, appropriate, or perfect. Burger v. Kemp, 483 U.S. 776, 794 (1987); see Marshall v. Hendricks, 307 F.3d 36, 91 (3d Cir. 2002). Rather, the focus is simply to ensure the proceedings resulting in Paolino's conviction and sentence resulted from proceedings that were fair. See Strickland, 466 U.S. at 686.

To establish prejudice, Paolino must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Knowles, 129 S. Ct. at 1422 (quoting Strickland, 466 U.S. at 694); see Rountree, 640 F.3d at 540. This, too, is an objective inquiry. Breakiron, 642 F.3d at 145.

Review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas." Yarborough v. Gentry, 540 U.S. 1, 6 (2003); see Richter, 131 S. Ct. at 788; Breakiron, 642 F.3d at 141-42; see also Pinholster, 131 S. Ct. at 1403 ("We take a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d).'" (citations omitted)). Accordingly, if the state court addressed counsel's effectiveness, a petitioner must show the state court's decision was objectively unreasonable. Woodford v. Visciotti, 537 U.S.

27

19, 25 (2002).

"[I]t is not enough to convince a federal habeas court that, in its independent judgment,"
the state court erred in applying Strickland.  Bell v. Cone, 535 U.S. 685, 699 (2002); see also
Richter, 131 S. Ct. at 778 ("A state court must be granted a deference and latitude that are not in
operation when the case involves review under the Strickland standard itself.").  "When §
2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is
whether there is any reasonable argument that counsel satisfied Strickland's deferential
standard."  Moore, 131 S. Ct. at 740.  Paolino, therefore, "must do more than show that he would
have satisfied Strickland's test if his claim were being analyzed in the first instance."  Bell, 535
U.S. at 698-99; see also Rountree, 640 F.3d at 540 (habeas petitioner's burden is greater than
simply showing prejudice under Strickland's second prong).

B.     State Court Jurisdiction Over Insurance Fraud

Paolino maintains in claim five, as he did before the Superior Court, that the trial court
did not have jurisdiction over the insurance fraud charges.  Pet'r's Br. at 50-51.  He claims the
Commonwealth alleged fraud against Medicare, a federal program, and such fraud could be
prosecuted only under federal law.  Id.  Further, Paolino asserts 18 Pa. Cons. Stat. Ann. §
4117(a)(2), which prohibits defrauding an insurer and presenting a false, incomplete, or
misleading claim to an insurer, is preempted by federal law.  Id. at 51-52.  The Superior Court
deemed this claim meritless.[18]  PCRA Appeal Op. at 13-14.  Because the state courts previously
addressed Paolino's jurisdictional claim, my review is limited to whether the state court's

---

[18] The PCRA court had deemed this claim waived.  See Opinion at 5, Commonwealth v.
Paolino, Nos. CP-09-CR-2180-2001, CP-09-CR-5020-2001, CP-09-CR-5021-2001 (Pa. Ct.
Com. Pleas Bucks Jan. 7, 2010) [hereinafter PCRA Op.].

decision was contrary to, or an unreasonable application of, clearly established federal law.  See

28 U.S.C. § 2254(d)(1).

> The Superior Court rejected the claim on its merits, reasoning:
>
> [Paolino] was charged with violating the laws of this Commonwealth, and he was charged, tried, and convicted accordingly.  To the extent that [Paolino] has presented a cognizable challenge to the jurisdiction of the trial court under 42 Pa.C.S.A. § 9543(a)(2)(viii), we are satisfied that the Court of Common Pleas of Bucks County had jurisdiction over the myriad criminal charges brought against [Paolino].  See Commonwealth v. Bethea, 574 Pa. 100, 113, 828 A.2d 1066, 1074 (2003), cert. denied, 540 U.S. 1118[] (2004) (stating that in this Commonwealth all courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code); and see Article V, Section 5 of the Constitution of 1968 and 42 Pa.C.S.A. § 931 (explaining the original jurisdiction of the courts of common pleas).

PCRA Appeal Op. at 14.  In response to Paolino's contention that the state court lacked

jurisdiction because Pennsylvania's insurance fraud statute was preempted by federal law, the

Superior Court summarily concluded Paolino "fail[ed] to recognize that, in the underlying case,

he was charged, tried, and convicted under the laws of this Commonwealth."  Id. at 13.

The Superior Court's determination was not contrary to, nor an unreasonable application

of, clearly established federal law.  See Williams, 529 U.S. at 407.  A "court has jurisdiction . . .

when the offence charged is within the class of offences placed by the law under its jurisdiction."

In re Bonner, 151 U.S. 242, 257 (1894); see also In re Coy, 127 U.S. 731, 758 (1888).  Although

a state court would not have jurisdiction to prosecute a petitioner under a statute preempted by

federal law, Congress is presumed to have not intended to displace state law.  Maryland v.

Louisiana, 451 U.S. 725, 746 (1981).

Paolino was convicted of insurance fraud under a Pennsylvania statute which prohibits

defrauding "any insurer or self-insured" or submitting a false, misleading, or incomplete claim to

an insurer.  18 Pa. Cons. Stat. Ann. § 4117(a)(2).  Paolino argues because Medicare is a federal

program and there was no fraud against the state of Pennsylvania, the trial court lacked

jurisdiction over the charges.  Pet'r's Br. at 50-51.  The statute does not require fraud against

Pennsylvania; it merely requires the government to show the defendant defrauded an "insurer,"

see 18 Pa. Cons. Stat. Ann. § 4117(a)(2), which includes federal insurance programs such as

Medicare.  Because the conviction arose from actions taken in Bucks County, Pennsylvania,

where Paolino maintained his practice, see Paolino, 837 A.2d at 1218, the state trial court had

jurisdiction, see Bethea, 828 A.2d at 1074.

Paolino also maintains the Pennsylvania insurance fraud statute, to the extent it prohibits

defrauding federal programs, is preempted by federal law.  Pet'r's Br. at 51-52.  There is no

indication Congress intended to preempt state law on insurance fraud by enacting laws regulating

Medicare.  Congress' silence as to the preemptive effect of the Medicare law on state insurance

fraud establishes Congress did not intend to preempt state law.  See Pa. Med. Soc. v. Marconis,

942 F.2d 842, 850 (3d Cir. 1991) ("[W]hen Congress remains silent regarding the preemptive

effect of its legislation on state laws[,] . . . Congress has failed to evince the requisite clear and

manifest purpose to supersede those state laws." (citing Cal. Fed. Savings & Loan Ass'n v.

Guerra, 479 U.S. 275, 287-88 (1987)).  Other courts have found states have authority to regulate

both criminal and civil fraud against federal insurance programs.  See People v. Kanaan, 751

N.W.2d 57, 71 (Mich. Ct. App. 2008) (state prosecution of fraud stemming from false billing to

Medicaid not preempted by federal law); State v. Rubio, 967 So. 2d 768, 775 (Fla. 2007) (state

prosecution of false statements made to induce Medicaid payments not preempted by federal

law); cf. Pa. Med. Soc., 942 F.2d at 857 (Pennsylvania Health Care Practitioners Medicare Fee

Control Act, which regulates billing practices of physicians treating Medicare patients, was not preempted by federal law).

Accordingly, Paolino has failed to establish the state courts' decisions rejecting claim five were objectively unreasonable.  See 28 U.S.C. § 2254(d)(1); Maryland, 451 U.S. at 746; In re Bonner, 151 U.S. at 257; see also Bowen v. Johnston, 306 U.S. 19, 23 (1939) ("The scope of review on habeas corpus is limited to the examination of the jurisdiction of the court whose judgment of conviction is challenged.").

    C.    Attorney General Presented Investigative Evidence Where He Had No Jurisdiction

Paolino alleges in claim nine, as he did before the Superior Court, his due process rights were violated when the Attorney General presented investigative evidence where he had no jurisdiction to investigate or prosecute Paolino for federal crimes.  Pet'r's Br. at 62-63.  The Superior Court noted Paolino was "entitled to no relief," because he "was charged, tried, and convicted under the laws of Pennsylvania."  PCRA Appeal Op. at 14.  This was not contrary to, or an unreasonable application of, Bonner or Bowen.

The Attorney General's Office has the power to investigate crimes related to drug law enforcement, 72 Pa. Cons. Stat. Ann. § 732-206(a), which would include an unlicensed physician writing prescriptions for narcotics.  Paolino's allegation the Attorney General investigated federal crimes is without merit for the reasons set forth in the preceding section.  Because the Attorney General had the power under Pennsylvania law to investigate Paolino for state crimes related to drug law enforcement, Paolino's claim the Attorney General had no jurisdiction is meritless.

    D.    Counsel's Failure to Object to Amendment of Information

Paolino also maintains in claim twenty-two his trial counsel was ineffective for failing to

file a written objection to the amendment of the criminal information.  Pet'r's Br. at 86-87.

Paolino alleges he was prejudiced by this failure because he was denied fair notice of the charges

and an opportunity to defend the new charges, and did not have adequate time to prepare a

rebuttal to the prosecution's expert witness.  Id.

The PCRA court rejected the claim, finding "counsel zealously advocated on behalf of his

client in opposition to the Commonwealth's motion to amend the criminal information, which is

evidenced by the entire transcript of the proceedings."  PCRA Op. at 10.  Moreover, the PCRA

court noted "the decision to allow the Commonwealth to amend the criminal information . . . was

based on sound argument and supporting law."  Id. at 11 (citing Commonwealth v. Picchianti,

600 A.2d 597 (Pa. Super. Ct. 1991)).

The Superior Court agreed, finding the claim was without arguable merit because the

record showed counsel did object to the amendment.  PCRA Appeal Op. at 16.  The Superior

Court concluded: "Clearly, counsel cannot be deemed ineffective for failing to make an

objection, when the record reveals that the objection was made."  Id.  This conclusion was not

contrary to, nor an unreasonable application of Strickland.

Paolino correctly asserts trial counsel failed to file a written response to the government's

motion to amend the information, as the trial court suggested at the March 15, 2002 hearing.  Tr.

3/15/02 at 33.  At the hearing, however, counsel vigorously opposed the motion, arguing it would

cause prejudice to Paolino and citing relevant case law.  See id.  at 8-11, 18-19, 24-25, 30.

Although counsel failed to file a written response, he opposed the motion at the hearing.  See

Information Amendment Order (noting trial court's decision was made upon consideration of the

response of defendants at the March 15, 2002 hearing and the record of the preliminary hearings).

Paolino has failed to satisfy the first prong of <u>Strickland</u>.

Moreover, Paolino has not shown how counsel's failure to file a written response to the motion prejudiced him. He has not cited any additional cases or facts counsel should have brought to the trial court's attention that would have persuaded the trial court to deny the motion to amend. Paolino also has failed to satisfy the second prong of <u>Strickland</u>.

Accordingly, Paolino has failed to establish the state courts' decisions rejecting claim twenty-two were objectively unreasonable. <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>Premo</u>, 131 S. Ct. at 740.

III.    <u>Petition For Appointment of Counsel and Request for Evidentiary Hearing</u>

Paolino has requested appointment of counsel to represent him for purposes of his habeas petition. <u>See</u> Pet'r's Br. at 29-30. He also asserts he is entitled to an evidentiary hearing on his habeas petition because his PCRA hearing was not "full and fair." Pet'r's Br. at 23-25. I find no basis for granting these requests.

There is no constitutional right to counsel in a federal habeas proceeding in a non-capital case. <u>See</u> <u>Reese v. Fulcomer</u>, 946 F.2d 247, 263 (3d Cir. 1991). I may, however, appoint counsel to represent an indigent petitioner if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B).

A district court has discretion to grant an evidentiary hearing if the petitioner meets the limitations of section 2254(e)(2).[19] <u>Goldblum v. Klem</u>, 510 F.3d 204, 220-21 (3d Cir. 2007).

---

[19] A federal court cannot hold an evidentiary hearing unless the applicant shows the claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered, or the applicant shows the "facts underlying the claim would be sufficient to establish . . . that but for the constitutional error, no reasonable factfinder would have found the applicant guilty." § 2254(e)(2).

The decision to hold an evidentiary hearing should focus on whether the hearing would be meaningful.  Campbell v. Vaughn, 209 F.3d 280, 287 (3d Cir. 2000).  A petitioner bears the burden of "'forecast[ing] . . . evidence beyond that already contained in the record' that would help his cause, 'or otherwise . . . explain[ing] how his claim would be advanced by an evidentiary hearing.'"  Id. (quoting Cardwell v. Greene, 152 F.3d 331, 338 (4th Cir. 1998)).  An evidentiary hearing "is not required on issues that can be resolved by reference to the state record."  Id. at 221 (quoting Schriro v. Landrigan, 550 U.S. 465, 474 (2007)).

Paolino claims a hearing should be held because the PCRA hearing was not "full and fair."  Pet'r's Br. at 23-25.  After the July 2, 2007 evidentiary hearing was continued pending the resolution of a petition Paolino filed with the Supreme Court, Paolino never requested an evidentiary hearing, as instructed.  Tr. 4/2/07 at 7-8.  Paolino has not explained how an evidentiary hearing or appointed counsel would advance his claims.  The extensive record in this case is sufficient to allow review of Paolino's claims, which are each either defaulted or meritless.  Paolino has failed to demonstrate how an evidentiary hearing could assist him in avoiding those inevitable legal conclusions, and I find no basis on which an evidentiary hearing would be meaningful.  The interests of justice do not merit appointment of counsel.  His requests for an evidentiary hearing and for appointment of counsel, therefore, should be denied.

Accordingly, I make the following recommendation:

<u>R E C O M M E N D A T I O N</u>

AND NOW, this 12th day of January, 2012, it is respectfully recommended that the petition for writ of habeas corpus be DENIED with prejudice, and that the motion for appointment of counsel and request for an evidentiary hearing be denied.  It is further recommended that there is no probable cause to issue a certificate of appealability.[20]  The petitioner may file objections to this Report and Recommendation within ten days after being served with a copy thereof.  <u>See</u> Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.  <u>See</u> <u>Leyva v. Williams</u>, 504 F.3d 357, 364 (3d Cir. 2007).


BY THE COURT:


  /s/ Timothy R. Rice
TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE

---

[20]  Because jurists of reason would not debate my recommended procedural or substantive dispositions of the petitioner's claims, no certificate of appealability should be granted.  <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

35